UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 13 |
| | ) | |
| JOSEPH VAN, | ) | No. 16 B 19075 |
| | ) | |
| Debtor. | ) | Judge Goldgar |

**MEMORANDUM OPINION**

Before the court for ruling is chapter 13 debtor Joseph Van's objection to the amended claim of DuPage County Treasurer Gwen Henry for 2012-15 property taxes. The claim (No. 5-1) amended an earlier claim that sought payment only of the 2015 taxes. The Treasurer amended her claim because the 2012-14 taxes had been sold – but the state court had issued declarations of sales in error, and the Treasurer had repaid the tax purchasers. So in her amended claim the Treasurer added the 2012-14 taxes to her original claim, increasing the claim amount and demanding 18 percent interest. The Treasurer's problem: not only had the bar date long passed, but two and a half years earlier Van had confirmed a plan that paid the 2012-14 taxes in a lower amount with no interest. The Treasurer had notice of the plan and did not object.

As discussed below, the Treasurer's amended claim is late and is barred. The Treasurer is bound by the confirmed plan. Van's objection will be sustained and the amended claim disallowed.

**1. Jurisdiction**

The court has subject matter jurisdiction of this case under 28 U.S.C. § 1334(a) and the district court's Internal Operating Procedure 15(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

## 2. Facts

The facts are drawn from Van's schedules in the bankruptcy case, the court's docket and claim register, and the parties' papers.[1] No facts are in dispute.

### a. Van and his Property

Van is 63 and lives with a roommate in a house in West Chicago, Illinois. Van has a one-fifth interest in the property: he and his brother and three sisters inherited it from their mother. (The brother and the sisters live elsewhere.) Van is unemployed. He subsists on Social Security, food stamps, and rent from the roommate.

West Chicago is in DuPage County. Van's house is subject to property taxes that DuPage County imposes annually.

### b. The Illinois Property Tax Collection System

Illinois employs a complex system for collecting property taxes. Because that system is described extensively elsewhere, *see In re LaMont*, 740 F.3d 397, 400-01 (7th Cir. 2014); *In re Commings*, 297 B.R. 701, 703-05 (Bankr. N.D. Ill. 2003); IICLE, *Real Estate Taxation* (2016), only a brief outline is needed here.

Each year on January 1, Illinois counties levy taxes on real property, and a lien securing payment of the taxes attaches to each owner's property. *LaMont*, 740 F.3d at 400. The taxes themselves are due the year after they are levied; the lien, on the other hand, arises right away. *Id.* In Illinois counties other than Cook, property taxes are paid in two installments. The first is due on June 1, the second on September 1. 35 ILCS 200/21-15. If the owner pays the taxes, the

---

[1] A bankruptcy court can take judicial notice of its own records, *In re Woodmar Realty Co.*, 294 F.2d 785, 788 (7th Cir. 1961), including a debtor's schedules, *Frierdich v. Mottaz*, 294 F.3d 864, 870 (7th Cir. 2002).

county's lien is extinguished. *LaMont*, 740 F.3d at 400; *Commings*, 297 B.R. at 704; IICLE, *supra*, § 10.5. If he does not, the county can recover the unpaid taxes through several kinds of "tax sales." *LaMont*, 740 F.3d at 400; *Commings*, 297 B.R. at 704.

Of these, the most common is the "annual tax sale." *Commings*, 297 B.R. at 704; *see generally* 35 ILCS 200/21-190 to -255. After the county collector applies for and receives from the state court a judgment and order of sale, 35 ILCS 200/21-175, the county offers the delinquent taxpayer's property for sale at a public auction, 35 ILCS 200/21-190.[2] But prospective purchasers at the auction do not bid the value of the property, and the winning bidder does not acquire the property itself. Purchasers instead bid the "amount due" on the property – the delinquent taxes plus fees and accrued interest – along with a penalty. 35 ILCS 200/21-215; IICLE, *supra*, § 10.27 at 10-25. On paying that amount, the successful bidder receives a "certificate of purchase," 35 ILCS 21-250; IICLE, *supra*, § 10.29 at 10-29, 10-31, entitling him either to reimbursement of the amount paid or to a deed. In effect, the county's lien "shifts" to the purchaser. *Commings*, 297 B.R. at 704.

Despite his victory at the auction, the purchaser cannot enforce the lien immediately. The taxpayer still has a chance to "redeem" the property. 35 ILCS 200/21-345. During the next two years, 35 ILCS 200/21-350(a), or two and a half years if the property is a residence, 35 ILCS 200-350(b), the taxpayer can pay to the county clerk whatever the purchaser paid at the sale, plus interest and other fees and charges, 35 ILCS 200/21-355. The clerk will then repay the purchaser. *A.P. Props., Inc. v. Goshinsky*, 186 Ill. 2d 524, 530, 714 N.E.2d 519, 522 (1999). The repayment releases the purchaser's claim against the property. 35 ILCS 200/21-390.

---

[2]    The "county collector" is the county treasurer. 35 ILCS 200/19-35.

If the taxpayer has not redeemed the property, then shortly before the redemption period ends the purchaser may petition the state court for a tax deed. 35 ILCS 200/22-30; *LaMont*, 740 F.3d at 401; IICLE, *supra*, § 10.68. If he does, and if the state court finds all statutory requirements are met, the court will order the county clerk to issue a tax deed to the purchaser. 35 ILCS 200/22-40(a). The purchaser will come away with "incontestable, merchantable title to the property." *Commings*, 297 B.R. at 705.

But sometimes the purchaser has "another option." *LaMont*, 740 F.3d at 401. Rather than seek a tax deed, he can apply to the state court for a declaration that the sale of the delinquent taxes was a "sale in error." 35 ILCS 200/21-310. The sale may have been "in error" for any of several statutorily prescribed reasons. *Id.* One is that either before the sale, or after the sale but before a tax deed was issued, the taxpayer petitioned for relief under the Bankruptcy Code. 35 ILCS 200/21-310(a)(6), (b)(1); *see also* IICLE, *supra*, §§ 10.30 at 10-34, 10.56.

If the court declares a "sale in error," the purchaser surrenders the certificate of purchase, and the county refunds the price paid at the sale, plus interest and costs, 35 ILCS 200/21-310(b), (d); *see* IICLE, *supra*, §§ 10.30 at 10-37, 10.63 at 10-73. At the point, the county resumes its claim for the unpaid taxes and again has a lien against the property. *See In re Bates*, 270 B.R. 455, 460 (Bankr. N.D. Ill. 2001) (stating that after a sale in error "the property (and the landowner) are again subject to liability for the unpaid taxes"); IICLE, *supra*, § 10.30 at 10-37.

### c. The Delinquent Property Taxes and the Bankruptcy Case

From 2012 through 2015, Van failed to pay the property taxes due on the West Chicago house. DuPage County sold taxes for three of the four years.

• The 2012 and 2013 taxes together totaled $10,335.07. The first installments were due

-4-

on June 1, 2013, and June 1, 2014, respectively, and the second installments on September 1, 2013, and September 1, 2014. Van did not pay either installment for either year. In November 2013, the County sold the unpaid 2012 taxes to Union Tax Investors. In November 2014, the County sold the unpaid 2013 taxes to Union Tax Investors.

• The 2014 taxes came to $4,220.72. The first installment was due on June 1, 2015, and the second on September 1, 2015. Van did not pay either installment. In November 2015, the County sold the unpaid 2014 taxes to Jolene M. Papendick.

• The 2015 taxes came to $2,998.42. The first installment was due June 1, 2016. Van did not pay it.

On June 9, 2016, before the second installment for 2015 came due (and so before the County could sell the taxes), Van filed this chapter 13 bankruptcy case.

The purpose of the case was to keep the West Chicago house and pay the delinquent taxes over time.[3] In his schedules, Van listed the County Clerk as a secured creditor for the 2012-14 taxes and the tax purchasers as additional "notice parties." He listed the County Treasurer as a secured creditor for the 2015 taxes. Van proposed a plan in which he would make monthly payments of $390.91 for 60 months. From that amount, he would pay the 2015 taxes (listed as $2,954.43) to the Treasurer with 12 percent interest. Once the 2015 taxes were paid, he would pay the 2012-14 taxes to the County Clerk without interest. Unsecured claims (which he estimated at $2,179) would be paid in full.[4] The bar date for creditors to file claims was October

---

[3]  The inference is a fair one. According to Van's schedules, the property tax claims were the only secured claims in the case; Van had no mortgage or car lender. Van's only unsecured claims were five general unsecured claims totaling $2,179.

[4]  Van proposed payments to the Clerk rather than the tax purchasers because an owner exercises his right of redemption by paying the county clerk who then pays the purchaser.

17, 2016.

The Treasurer filed a timely claim for the 2015 taxes but listed $2,998.42 as the amount of the claim and also sought interest of 18 percent. She also objected to confirmation of Van's plan because, she said, the 2015 tax figure and proposed interest rate were too low. The Treasurer did not file a claim for the 2012-14 taxes and did not object to the plan's treatment of those taxes. The tax purchasers, Union Tax Investors and Papendick, did not file claims for those taxes either and did not object to confirmation.

Some months later, Van proposed an amended plan that answered the Treasurer's objection. Van increased the 2015 taxes and the interest rate to the Treasurer's figures. He also changed the payment terms to have the tax claims paid one at a time: the 2015 taxes would be paid first, then the 2012-13 taxes, and then the 2014 taxes. Because Union Tax Investors and Papendick still had not filed claims, Van filed claims on their behalf in the amounts and with the interest rates shown in the plan. Both claims instructed the chapter 13 trustee to make payments to the Clerk.

Neither the Treasurer, Union Tax Investors, Papendick, nor any other creditor objected to confirmation of the amended plan, and in November 2016 the plan was confirmed. Since then, Van has made all of his monthly plan payments.

Meanwhile, Union Tax Investors had petitioned for an order declaring sales in error because of Van's bankruptcy. In August 2017, the state court granted the petition and declared

---

But Van could have proposed payments directly to the purchasers. Although a tax purchaser is not considered a creditor of the owner under Illinois law, *A.P. Props.*, 186 Ill. 2d at 530, 714 N.E.2d at 522, he is considered a creditor in the owner's bankruptcy case, *LaMont*, 740 F.3d at 406-09 (holding that a tax purchaser is a "creditor" with a "claim"); *Commings*, 297 B.R. at 706-08 (same). The different treatment results from the Bankruptcy Code's broad definition of "claim." *See LaMont*, 740 F.3d at 407; *Commings*, 297 B.R. at 706-07.

sales in error for the 2012 and 2013 taxes. That September, the Treasurer paid Union Tax Investors the refund due. Some time in 2018, Papendick likewise petitioned for an order declaring a sale in error for the 2014 taxes. In February 2019, the state court granted her petition. In September 2019, the Treasurer presumably paid Papendick the refund due.[5]

On March 1, 2019, a month after Papendick obtained the declaration of a sale in error and nearly two and a half years after Van's plan was confirmed, the Treasurer filed an amended claim. The amendment added a claim for the 2012-14 taxes. The Treasurer increased the total amount of her claim more than $5,000 – from $17,554.21 to $23,016.93.[6] She also increased from 0 to 18 percent the interest to be paid on the portion attributable to the 2012-14 taxes.

Van objects to the Treasurer's amended claim. He says the amended claim is inconsistent with the treatment of the 2012-14 taxes in his plan and argues that the confirmed plan binds the Treasurer. The Treasurer disagrees.

### 4. Discussion

Van's objection to the Treasurer's amended claim will be sustained and the claim disallowed. The amended claim is late, and the amendment does not relate back to the Treasurer's original claim. As Van correctly contends, his confirmed plan is binding on the Treasurer, who had notice of the plan and did not object. She cannot return years after confirmation and insist on better treatment.

---

[5] Because this matter was briefed before September 2019, the record does not reflect whether the Treasurer paid the refund. No party says she has not.

[6] The increased amount of the claim reflected 18 percent interest accrued on the 2012-14 taxes from the petition date through the filing of the amended claim. The Treasurer was not disputing the amounts of the taxes themselves.

### a. The Amended Claim is Late

The Treasurer's amended claim is late because it was filed past the deadline (known in bankruptcy circles as the "bar date") in the Bankruptcy Code and Rules.

Section 501(a) of the Code allows a creditor with a claim to file a proof of claim, 11 U.S.C. § 501(a), meaning "a written statement setting forth [the] claim," Fed. R. Bankr. P. 3001(a). With limited exceptions inapplicable here, all creditors, secured and unsecured, must file proofs of claim for their claims to be allowed. Fed. R. Bankr. P. 3002(a).[2/] The Code and Rules contain deadlines by which proofs of claim must be filed. Most creditors have 70 days after the petition date to file proofs of claim. Fed. R. Bankr. P. 3002(c). Governmental units have 180 days. 11 U.S.C. § 502(b)(9); Fed. R. Bankr. P. 3002(c)(1). A proof of claim filed after the deadline is late, and in a chapter 13 case the claim will be disallowed if a party in interest objects. 11 U.S.C. § 502(b)(9) (declaring that a claim is not allowed if a party objects and "proof of such claim is not timely filed"); *see In re Tarbell*, 431 B.R. 826, 827 (Bankr. W.D. Wis. 2010) ("As a general matter, late-filed claims are completely barred in a chapter 13 case.").

The goal of this scheme is "to alert the court, trustee, and other creditors, as well as the debtor, to claims against the estate." *Adair v. Sherman*, 230 F.3d 890, 896 (7th Cir. 2010) (internal quotation omitted); *see also In re Unroe*, 937 F.2d 346, 349 (7th Cir. 1991). The bar date serves "the salutary purpose of finality." *In re marchFirst, Inc.*, 448 B.R. 499, 507 (Bankr. N.D. Ill. 2011); 9 *Collier on Bankruptcy* ¶ 3003.03[4] at 3003-8 (Richard Levin & Henry J. Sommer eds., 16th ed. 2019) (noting that claims bar dates promote "finality and debtor

---

[2/] Not until 2017 was Rule 3002(a) amended to make the requirement for secured creditors explicit. Even before 2017, though, the court of appeals had read the rule to require secured creditors to file proofs of claim. *See In re Paijan*, 785 F.3d 1161, 1164 (7th Cir. 2015).

rehabilitation"). The bar date defines the universe of claims in the case. Once the claims are known, parties can "concentrate on determining their validity and providing for payment." *Holstein v. Brill*, 987 F.2d 1268, 1270 (7th Cir. 1993). "Requiring all creditors to file claims by [a certain] date allows the debtor to craft and finalize a Chapter 13 plan without the concern that other creditors might swoop in at the last minute and upend a carefully constructed repayment schedule." *Paijan*, 785 F.3d at 1164.

In this case, the Treasurer filed her amended claim well after the bar date. Because the Treasurer is a "governmental unit," *see* 11 U.S.C. § 101(27), she had 180 days after Van's petition date to file a proof of claim. The petition date was June 9, 2016, making the Treasurer's bar date December 6, 2016. The Treasurer did not file her amended claim until March 1, 2019, almost 27 months later.

Although the Treasurer dubs her claim an "amended claim," and although a claim amended after the bar date can be timely, the Treasurer's claim was not. Amendments to claims are analyzed under Rule 15 of the Federal Rules of Civil Procedure as if they were amendments to complaints. *Holstein*, 987 F.2d at 1270; *In re Stavriotis*, 977 F.2d 1202, 1204 (7th Cir. 1992); *Unroe*, 937 F.2d at 349. For an amended claim to relate back to the original filing date, it must be one "that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original [claim]." Fed. R. Civ. P. 15(c)(1)(B). The claim, in other words, must be "sufficiently linked" to the original. *Disch v. Rasmussen*, 417 F.3d 769, 776 (7th Cir. 2005). If the facts remain the same and were brought to the parties' attention by the original claim, the amended claim is timely. *Maxwell v. Novell, Inc. (In re marchFirst, Inc.)*, 431 B.R. 436, 443 (Bankr. N.D. Ill. 2010). If it is "a veiled attempt to assert a distinctly new right to payment" to which the parties were not "fairly alerted," the amended claim is barred. *Id.* (quoting *Gens v.*

*Resolution Trust Corp.*, 112 F.3d 569, 575 (1st Cir. 1997)).

The amended claim here fails this test. The Treasurer's original claim concerned Van's 2015 property taxes. Her amended claim concerns not only the 2015 taxes but also the 2012-14 taxes – taxes for different years and in different amounts. By adding new tax years, the amended claim asserts a "distinctly new right to payment," one arising out of different facts. *Id.* (internal quotation omitted). Nothing about the Treasurer's original claim for the 2015 taxes would have alerted Van that she also wanted to be paid the 2012-14 taxes if sales in error were declared.[8] *See Unroe*, 937 F.2d at 349 (holding barred as untimely an amended IRS claim for a different tax year because "[s]eparate years imply separate tax claims"); *Stavriotis*, 977 F.2d at 1206 n.4 (same).

Because the Treasurer's amended claim was filed after the bar date and does not relate back to the original, the amended claim is late and is barred. The claim will be disallowed.[9]

### b. The Amended Claim is not a Post-Petition Claim

In her response to Van's objection, the Treasurer takes a different tack. Rather than contend her amended claim is a timely pre-petition claim, she maintains that the claim for the

---

[8] Quite the contrary: because no proofs of claim had been filed for those years, Van himself filed them. *See* 11 U.S.C. § 501(c) ("If a creditor does not timely file a proof of such creditor's claim, the debtor or trustee may file a proof of such claim"); Fed. R. Bankr. P. 3004 (setting the deadline for the debtor or trustee to file late claim on a creditor's behalf).

[9] The claim's disallowance neither gives Van a windfall nor deprives the County of the 2012-14 taxes. Once sales in error were declared and the Treasurer repaid the tax purchasers, she resumed her status as tax claimant and lienholder for those tax years. Van must continue to pay the taxes under the confirmed plan. The only difference is that the County Clerk will keep the payments Van makes rather than forward them to the tax purchasers. Disallowance of the claim merely prevents the Treasurer from increasing Van's tax obligations in the middle of his case, forcing him either to amend his plan to pay them or risk facing them post-discharge.

2012-14 taxes arose post-petition. According to the Treasurer, she was not Van's creditor for the 2012-14 taxes until Union Tax Investors and Papendick had sales in error declared. Only then, when the liens and rights to payment reverted to her, did she have a claim for those years. Because she obtained those rights post-petition, she insists her claim is not barred.

The Treasurer is mistaken. A "creditor" is an entity with "a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A). A "claim" is a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured," 11 U.S.C. § 101(5)(A), or a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment," 11 U.S.C. § 101(5)(B). This definition is deliberately "expansive." *Pennsylvania Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 558 (1990); *see also Johnson v. Home St. Bank*, 501 U.S. 78, 83 (1991) (noting that Congress adopted "the broadest available definition of 'claim'").

The Treasurer was Van's creditor for the 2012-14 taxes well before 2016 when he filed his chapter 13 case. In each of those years, the Treasurer had a lien against Van's property for the unpaid taxes as of January 1. The lien was an *in rem* claim, a claim against the property. *LaMont*, 740 F.3d at 408; *Commings*, 297 B.R. at 707. A "claim against the debtor" includes "a claim against the property of the debtor." 11 U.S.C. § 102(2); *see also Johnson*, 501 U.S. at 84 (holding that a "creditor . . . who has a claim enforceable only against the debtor's property nonetheless has a 'claim against the debtor' for purposes of the Code" (quoting 11 U.S.C. § 102(2))). And along with her *in rem* claim, the Treasurer had a right to payment of the taxes themselves, although the payments were not due until June 1 and September 1 of the next year.

Although the Treasurer sold the 2012-14 taxes, and although the sales transferred the

liens for those years to Union Tax Investors and Papendick, the Treasurer remained Van's creditor because she continued to have a "claim" against him as the Code defines that term. "Claim" includes a "right to payment . . . whether or not such right is . . . contingent." 11 U.S.C. § 101(5)(A). A "contingent" claim is one "conditioned upon some future event that is uncertain." *Saint Catherine Hosp. of Ind., LLC v. Indiana Family & Soc. Servs. Admin.*, 800 F.3d 312, 318 (7th Cir. 2015); *see also In re Rosteck*, 899 F.2d 694, 697 (7th Cir. 1990). The Treasurer's rights against Van for the 2012-14 taxes were contingent on the declaration of a sale in error, a future event that was uncertain. Uncertain or not, though, she had a claim. It made no difference that she had no immediate collection right and indeed might never have one. *Owens v. LVNV Funding, LLC*, 832 F.3d 726, 730-32 (7th Cir. 2016).

Once the state court declared sales in error and the tax purchasers recovered the amounts due them, the liens and rights to payment reverted to the Treasurer, as she points out. But although the sales in error were declared post-petition, that did not make the Treasurer's claim post-petition, as she believes. All that happened was that the contingency on which her prepetition claim depended came to pass. A contingent claim is not a post-petition claim simply because the contingency on which the claim depends takes place post-petition. *See United States v. Gerth*, 991 F.2d 1428, 1433-34 (8th Cir. 1993); *Braniff Airways, Inc. v. Exxon Co.*, 814 F.2d 1030, 1036 (5th Cir. 1987) ("The character of a claim is not transformed from prepetition to post-petition simply because it is contingent . . . when the debtor's petition is filed."); *In re Wade Cook Fin. Corp.*, 375 B.R. 580, 595 (B.A.P. 9th Cir. 2007); *In re Bonnett*, 158 B.R. 125, 127 (Bankr. C.D. Ill. 1993).

The Treasurer, then, has always been Van's creditor and has always had a claim for the 2012-14 taxes. She cannot avoid the bar date's effect by calling her claim "post-petition."

### c. The Confirmed Plan Binds the Treasurer

Well before the Treasurer filed her amended claim for the 2012-14 taxes, Van confirmed a plan that treated those taxes. His confirmed plan binds the Treasurer, who had notice of it and did not object to its confirmation.

"Confirmation is the bright line in the life of a Chapter 13 case at which all the important rights of creditors and responsibilities of the debtor are defined and after which all rights and remedies must be determined with reference to the plan." *In re Bruce*, ___ B.R. ___, ___, 2019 WL 5887173, at *4 (Bankr. W.D. Wis. Sept. 27, 2019) (internal quotation omitted). Under section 1327(a) of the Code, "[t]he provisions of a confirmed plan bind the debtor and each creditor whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, accepted, or has rejected the plan." 11 U.S.C. § 1327(a). Section 1327(a) "is a strong statement." Keith M. Lundin, *Lundin on Chapter 13*, § 120.2 at ¶ 1, LundinOnChapter13.com (last visited Jan. 8, 2020). It means "[t]he confirmed Chapter 13 plan controls the debtor-creditor relationship unless and until the plan is modified or the creditor is relieved of its effects." *Id.* at ¶ 2.

A plan is binding on a creditor as long as the creditor had "adequate notice" of the bankruptcy case. *In re Harvey*, 213 F.3d 318, 321 (7th Cir. 2000); *see also Adair*, 230 F.3d at 894 (stating that "once a bankruptcy plan is confirmed, its terms are not subject to collateral attack" from a party with notice); *In re Chappell*, 984 F.2d 775, 782 (7th Cir. 1993); *In re Pence*, 905 F.2d 1107, 1109-10 (7th Cir. 1990); *In re Ranieri*, 598 B.R. 450, 457-58 (Bankr. N.D. Ill. 2019). The Treasurer plainly had notice of Van's bankruptcy, since she filed a proof of claim for the 2015 taxes and objected to confirmation of Van's original plan. She also had notice of his amended plan and did not object to its confirmation. The Treasurer is no position now to vary

Van's obligations for the 2012-14 taxes by filing a claim years into his case.

Because the plan is binding, once Van completes his payments under it his debts for the 2012-14 taxes (as well as for the 2015 taxes) will be discharged. He will have paid those debts in full in accordance with the plan. Under section B(3) of the plan, the liens that secured payment of the debts will also "terminate and be released by the creditor." At that point, Van will have no further liability for the unpaid taxes, and neither will the West Chicago property – the goal of Van's chapter 13 case all along.

Had the Treasurer wanted to avoid this result and protect her interests, she could have easily done so. All she had to do was file contingent proofs of claim for the sold taxes and object to confirmation of any plan that failed to give the taxes proper treatment if the sale-in-error contingencies became realities. Other Illinois counties file proofs of claim for sold taxes. *See, e.g., In re Williams*, No. 18 B 20541 (Bankr. N.D. Ill.). What the Treasurer may not do is what she did here: come back into a chapter 13 case well after confirmation, file a late claim that increases the debtor's obligations, and in so doing "upend a carefully constructed repayment schedule." *Paijan*, 785 F.3d at 1164.

## 5. Conclusion

The objection of debtor Joseph Van to Claim No. 5-1 of DuPage County Treasurer Gwen Henry is sustained. The claim is disallowed. A separate order will be entered consistent with this opinion.

Dated: January 13, 2020

_____
A. Benjamin Goldgar
Chief United States Bankruptcy Judge